UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VERTEX REFINING, NV, LLC, ) | |
| ) | |
| Plaintiff ) | |
| v. ) | No. 16 CV 3498 |
| ) | |
| NATIONAL UNION FIRE INSURANCE, ) | |
| COMPANY OF PITTSBURGH, PA, and ) | Judge Rebecca R. Pallmeyer |
| ASSURANCE AGENCY, LTD., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

In December 2013, an explosion and fire caused substantial damage to facilities operated by Omega Holdings Company, LLC, Omega Refining, LLC, and Bango Refining, LLC (collectively, "Omega"). Some months later, Plaintiff Vertex Refining, NV, LLC ("Vertex"), made a loan to Omega; as security, Vertex required that it be added as a named payee on a property insurance policy issued to Omega by Defendant Assurance Agency, Ltd. ("Assurance") on behalf of Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union"). Assurance did issue an insurance certificate listing Vertex as an additional insured, entitled to payment, but National Union instead paid the insurance proceeds directly to Omega. Omega has now defaulted on the loan to Vertex, and Vertex seeks damages from Assurance and National Union in the amount it would have received, had National Union made the claim payment to Vertex. Vertex's complaint alleges breach of contract, negligence, and negligent misrepresentation as against National Union (Counts I and IV) and as against Assurance (Counts II, III, and V). National Union has moved to dismiss the tort claims asserted against it in Count IV. For the reasons explained here, the motion is denied.

### BACKGROUND

The facts of this case are taken from Vertex's amended complaint, which the court assumes to be true for this motion. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675

1

(7th Cir. 2016). The court's jurisdiction is secure: Vertex is a citizen of Texas. (Amended Complaint [21] ("Am. Compl.") ¶ 2.) Its sole member, another LLC, has as its sole member a Nevada corporation with a principal place of business in Texas. (*Id.* at ¶ 2.) National Union is a Pennsylvania corporation with its principal place of business in New York, while Assurance is incorporated and has its principal place of business in Illinois. (*Id.* at ¶¶ 3–4.) Vertex seeks damages of at least $4,980,000. (*Id.* at ¶¶ 43, 73.)

This case arises out of a loan Vertex made to Omega—secured, Vertex understood, by insurance proceeds payable to Omega by its insurer, National Union. Omega had purchased that policy, effective April 30, 2013, through Assurance. (Am. Compl. ¶¶ 9–10.) Vertex alleges that National Union authorized Assurance to sell National Union products and to make certain changes to policyholders' coverage, such as the addition of "additional interests like Lenders Loss Payees and additional insureds, and to communicate with the insured policyholder and third parties regarding those additional interests." (*Id.* at ¶¶ 11–12.) Vertex asserts that National Union also dictated the manner in which Assurance could conduct these activities, and that Assurance's activities "affected the legal relationship between National Union and Omega and between National Union and the holders of the additional interests." (*Id.* at ¶¶ 11, 14–15.) Assurance was authorized to issue insurance certificates on behalf of National Union (*id.* at ¶¶ 13, 16), and under Omega's policy, any party to whom an insurance certificate was issued was automatically added to the policy as a covered insured. (*Id.* at ¶¶ 16, 27; *see* Ex. A to Am. Compl. [21-1] at 38.)

On or around December 9, 2013, Omega made a policy claim for an explosion and fire at its facility. (Am. Compl. ¶ 17.) In April 2014, Omega assigned to Vertex its rights to collect the claim payments from National Union as security for its obligations to Vertex under a secured promissory note. (*Id.* at ¶ 18.) To that end, Vertex required that it be added to Omega's policy

as a Lender's Loss Payee.[1] (*Id.* at ¶ 19.) Omega did request that Assurance add Vertex to Omega's policy (*id.* at ¶¶ 20–21), and on or around April 30, 2014, Assurance issued an insurance certificate naming Vertex as a Lender's Loss Payee and representing that Vertex was named on Omega's policy. (*Id.* at ¶¶ 22, 24.) Vertex alleges that it relied on this certificate when it extended the loan to Omega, and would not have done so without being added to Omega's policy. (*Id.* at ¶¶ 25–26.) National Union endorsed the policy with Vertex as a Lender's Loss Payee. (*Id.* at ¶ 28.)

As Lender's Loss Payee, Vertex asserts, Vertex was entitled to payment on Omega's insurance claim. (*Id.* at ¶¶ 29–30, 32.) But National Union instead paid the proceeds to Omega, not Vertex, either (1) because Assurance and/or National Union did not properly endorse the policy, and/or (2) because National Union did not comply with the policy terms. (*Id.* at ¶¶ 31, 33.) Omega defaulted on the note, and Vertex contends it is owed $4,980,000 of the claim proceeds. (*Id.* at ¶¶ 34–37.)

Vertex sued Assurance and National Union on March 22, 2016. On May 17, 2016, Vertex amended its complaint, alleging claims against National Union and Assurance.[2] National Union has moved to dismiss Count IV, in which Vertex charges it with negligence and negligent misrepresentation, under Federal Rules of Civil Procedure 10(b) and 12(b)(6). The court first addresses Rule 12(b)(6) and then Rule 10(b).

---

[1] This term appears undefined in the policy, but presumably means a party entitled to receive claim proceeds payable to Omega's lender.

[2] Approximately two weeks after National Union filed this motion to dismiss, Assurance filed a third-party complaint against Omega and two of its officers [28]. The court dismissed the third-party claims against the officers for lack of personal jurisdiction. (Min. Order, Dec. 16, 2016 [53].) The third-party complaint alleges that on March 4, 2016, Omega filed for liquidation under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 *et. seq* in the U.S. Bankruptcy Court for the District of Colorado. (Def. Assurance's Third-Party Compl. [28] ¶ 3.) The court is not certain whether Omega retained any of the money paid out by National Union, or whether Vertex has filed a proof of claim in the bankruptcy proceeding.

**DISCUSSION**

**I.    Rule 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a claim for relief that is legally sound and plausible on its face." *Avila v. CitiMortgage, Inc.*, 801 F.3d 777, 781 (7th Cir. 2015). The facts pleaded in the complaint must allow the court to reasonably infer that the defendant is liable for the alleged wrongdoing. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a plaintiff need not make detailed factual allegations, the plaintiff must do more than plead legal conclusions, elements of a cause of action, or label such conclusions or elements as "factual allegations." *W. Bend Mut. Ins. Co.*, 844 F.3d at 675. National Union argues that Vertex has not met these minimal tests for either of its tort claims because the allegations do not establish that Assurance acted as National Union's agent. In the alternative, National Union argues that the economic loss doctrine defeats Vertex's claims.

**A.    Principal-Agent Relationship**

Vertex seeks to hold National Union liable for tortious acts of Assurance, which Vertex contends was National Union's agent. A principal-agent relationship exists when the alleged principal has the right to control the alleged agent, and the alleged agent can affect the legal relationships of the alleged principal. *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) (citing Illinois cases); *see also Opp v. Wheaton Van Lines, Inc.*, 231 F.3d 1060, 1064 (7th Cir. 2000) (noting the accord of Illinois and federal law with the Restatement (Second) of Agency). An agent can have actual or apparent authority to act on behalf of the principal. *Opp*, 231 F.3d at 1064 (quoting *C.A.M. Affiliates, Inc. v. First American Title Ins. Co.*, 306 Ill. App. 3d 1015, 1021, 715 N.E.2d 778, 783 (1st Dist. 1999)). An agent has actual authority when the principal explicitly or implicitly authorizes the agent to perform a particular act. *Opp*, 231 F.3d at 1064; *see* Restatement (Second) of Agency § 7 (1958). "Apparent authority arises when a principal creates, by its words or conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf." *Weil,*

*Freiburg & Thomas, P.C. v. Sara Lee Corp.*, 218 Ill. App. 3d 383, 390, 577 N.E.2d 1344, 1350 (1st Dist. 1991).

National Union contends Vertex's allegations are insufficient to establish agency. National Union cites *Whitley v. Taylor Bean & Whitacker Mortgage Corp.*, 607 F. Supp. 2d 885, 895–96 (N.D. Ill. 2009), where the court found an agency relationship on the strength of allegations not made in this case: a contract authorizing the agent to negotiate loans; the agent's use of the principal's policies, software, and training materials; and payments from the principal to the agent. In a second case, *Frazier v. U.S. Bank National Association*, No. 11 C 8775, 2013 WL 1337263, at *4 (N.D. Ill. Mar. 29, 2013), plaintiff alleged that defendants acted as agents for a bank, noting that they engaged in loan servicing and were responsible for "property services" for delinquent mortgage loans. Vertex has not made such allegations in this case, National Union urges.

To the extent National Union suggests these non-precedential decisions set some kind of minimum standard for an allegation of agency, the court disagrees. Nor does the court agree with National Union's contention that Vertex has set forth *no* allegations supporting an agency relationship. To the contrary, Vertex explains that National Union controlled the manner and method by which Assurance could sell and service National Union's products. (Am. Compl. ¶ 11.) Vertex further notes that National Union authorized Assurance to "effectuate certain coverage changes, such as the addition and deletion of additional interests like Lenders Loss Payees and additional insureds[;]" communicating with policyholders; and issuing certificates of insurance and other proof of coverage. (*Id.* at ¶¶ 12–13.) While Vertex does not describe (and may not know) the specific ways that National Union exercised this control, Vertex does allege that National Union controlled the manner that Assurance added insured interests to policies and communicated about those changes. (*Id.* at ¶ 14.)

Second, Vertex's allegations identify transactions that Assurance conducted on behalf of National Union. Assurance was authorized to and did sell a National Union policy to Omega (*id.*

5

at ¶¶ 9–10), and could add and delete additional insureds from those policies, unilaterally affecting National Union's obligations. (*Id.* at ¶¶ 11–12, 15–16.) Vertex also alleged that Assurance conducted this specific transaction on behalf of National Union, adding Vertex as a loss payee on National Union's policy with Omega, and issuing the corresponding certificate of insurance. (*Id.* at ¶¶ 20–22.) These activities contrast with mere legal conclusions to the effect of "National Union had the right to control Assurance," or "Assurance could conduct transactions on behalf of National Union." The court concludes Vertex has alleged enough facts to meet the Rule 8(a) minimum.

Three other district court rulings cited by National Union do not alter this court's conclusion. In *Tribett v. BNC Mortgage, Inc.*, No. 07 C 2809, 2008 WL 162755, at *4 (N.D. Ill. Jan. 17, 2008), the only allegation supporting agency was a payment from the alleged principal to the alleged agent. Vertex's allegations are more substantial; Vertex alleges that National Union had the right to control Assurance's activities, and that Assurance had authority to change National Union's legal relationships. In *Rand Bond of North America, Inc. v. Saul Stone & Co.*, 726 F. Supp. 684, 687 (N.D. Ill. 1989), the plaintiff alleged only "the naked conclusion that Rudman was Stone's agent." In *Sefton v. Toyota Motor Sales U.S.A.*, No. 09 C 3787, 2010 WL 1506709, at *3 (N.D. Ill. Apr. 14, 2010), the plaintiff alleged only "that [the purported agent] [wa]s owned by, operated by, and [wa]s an agent of [the purported principal]." National Union reminds the court "that pleading the existence of an agency relationship requires more than a general statement that such a relationship exists[,]" *Sefton*, 2010 WL 1506709, at *3, and that "it remains incumbent on the pleader to allege *some* factual predicate . . . to create the inference" of agency. *Rand*, 726 F. Supp. at 687 (emphasis in original); (Def. National Union's Reply in Supp. of Mot. to Dismiss Count IV [36] ("Reply") 5–6.) But the plaintiffs in *Sefton* and *Rand* pleaded little more than a legal conclusion, unsupported by facts. Vertex, in contrast, has identified specific activities that Assurance allegedly performed on National Union's behalf, but under National Union's ultimate control.

Rule 8(a) does not require that Vertex allege more details concerning the manner of National Union's control; such a burden would require Vertex to have access to National Union's and Assurance's business records before discovery. Indeed, *Rand* itself acknowledges that a plaintiff must allege a "factual predicate (*even though generalized rather than evidentiary in nature*) to create the inference [of agency]." *Rand*, 726 F. Supp. at 687 (emphasis added). National Union's suggestion that Vertex must provide details of the "who," "what," and "how" is more reminiscent of the pleading standard for Rule 9(b), which is inapplicable here. Vertex has pleaded enough facts to support its allegations of an agency relationship.

### B. The Economic Loss Doctrine

In its opening brief, National Union argued that the negligence and the negligent misrepresentation claims are both barred by the economic loss rule, also known as the *Moorman* doctrine.[3] Under that doctrine, claims alleging only injury to economic interests may proceed only in contract, as opposed to both contract and tort. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 91–92, 435 N.E.2d 443, 453 (Ill. 1982). Vertex responded that the *Moorman* doctrine does not apply because 735 ILCS 5/2-2201(a), effective in 1997, requires an "insurance producer" to exercise ordinary care "in renewing, procuring, binding, or placing" coverage. 735 ILCS. 5/2-2201(a). "Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 162, 636 N.E.2d 503, 514 (1994).

In its reply, National Union appears to concede that section 2-2201 authorizes Vertex to pursue a negligence claim. (*See* Reply 8–10.) The court agrees; section 2-2201(a) imposes a duty of care upon Assurance, so Assurance and its principal, National Union, may be liable for a

---

[3] The parties apparently agree that Vertex has an obligation to plead around the *Moorman* doctrine. *See Anderson v. Keip*, No. 95 C 50159, 1997 WL 78860, at *1 (N.D. Ill. Feb. 24, 1997) ("[T]he *Moorman* defense . . . is not an affirmative defense. Rather, it goes to the legal sufficiency of the negligence claim[.]").

breach of that duty, independent of any contract claim. *See Country Mut. Ins. Co. v. Carr*, 366 Ill. App. 3d 758, 769, 852 N.E.2d 907, 916 (4th Dist. 2006), *vacated pursuant to settlement sub nom. In re Country Mut. Ins. Co.*, 889 N.E.2d 209 (Ill. 2007) (holding that section 2-2201(a) imposes a duty of ordinary care on insurance agents, so a negligence claim against an insurance agent was not barred by the *Moorman* doctrine); *see also* 735 ILCS 5/2-2201(a); *Golf v. Henderson*, 376 Ill. App. 3d 271, 278–79, 876 N.E.2d 105, 112–13 (1st Dist. 2007) (citing *Carr*, 366 Ill. App. 3d 758, 852 N.E.2d 907) (explaining that a statutory duty was extracontractual, so the *Moorman* doctrine did not apply).

National Union nevertheless insists that Vertex's negligent *misrepresentation* claim should be dismissed. First, National Union argues that although section 2-2201(a) imposes a duty of ordinary care, a negligent misrepresentation claim requires a duty to communicate accurate information, *see First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 334–35, 843 N.E.2d 327, 332 (2006), a "much different and much more specific" duty than the duty of ordinary care. (Reply 8.) Second, National Union argues that the *Moorman* doctrine bars any negligent misrepresentation claim against an insurance agent like Assurance, meaning that National Union cannot be vicariously liable. To the extent Vertex attempts to invoke the "commercial information provider" exception to the *Moorman* bar—available when the defendant is in the business of supplying information for the guidance of others in business transactions, *First Midwest Bank*, 218 Ill. 2d at 337, 843 N.E.2d at 333–34—National Union insists it does not apply here.

### 1.     The Duty to Communicate Accurately

First, National Union's distinction between the duty of ordinary care in section 2-2201(a) and the duty to communicate accurate information assumes that these duties do not overlap. Vertex contests that assumption and urges that Assurance had a duty to communicate accurate information as part of its duty of care. (*See* Pl.'s Resp. in Opp. to National Union's Mot. to Dismiss Count IV [29] ("Resp.") 13.) The parties do not cite any cases addressing whether the

8

insurance producer's duty of care includes the duty to communicate accurate information,[4] and the court located just one such case. In *Selective Insurance Co. of The Southeast v. Homeworks Central Inc.*, No. 4:12-CV-4017-SLD-JAG, 2013 WL 1286982, at *5 (C.D. Ill. Mar. 26, 2013), the third-party plaintiff brought a negligent misrepresentation claim, which the third-party defendant moved to dismiss based on the *Moorman* doctrine. Both parties focused on whether the business information provider exception applied. *Selective Ins.*, 2013 WL 1286982, at *5. In addressing those arguments, the district court emphasized that the "business information provider" exception arose because a defendant in the business of supplying information for the guidance of others has a duty outside of the contract. *See id.*

> Thus, the reason that the negligent misrepresentation exception requires that the offending party be in the business of supplying information for the guidance of others in their business transactions is to ensure that liability is only imposed upon an offending party who has undertaken a duty in tort to provide accurate information. Conversely, when the information provided is merely ancillary to the sale of a product, the Illinois courts do not impose a duty in tort to ensure the information is accurate. Rather, the accuracy of information obtained incidental to the sale of a product can be memorialized in contract terms.

*Id.* (internal citations omitted). The heart of the inquiry was therefore whether the third-party defendant owed the third-party plaintiff "a *duty* in tort to communicate accurate information." *Id.* at *6 (emphasis added). The court found "[t]he Illinois state legislature has answered this question in the affirmative, for 735 ILCS 5/2–2201(a) imposed a duty of ordinary care" when procuring insurance. *Id.* The court thus implicitly concluded that the duty of ordinary care imposed by section 2-2201(a) includes the duty to communicate accurate information.

---

[4] National Union cites *F.D.I.C. v. Masarsky*, 968 F. Supp. 2d 915 (N.D. Ill. 2013) for its claim that section 2-2201(a) does not cover the duty to communicate accurate information found in a negligent misrepresentation claim. *Masarsky* makes no such determination. The plaintiff in *Masarsky* alleged negligent misrepresentation in one count and negligence in another. *Id.* at 919. The court first addressed the negligent misrepresentation claim, and concluded that the information provider exception to the *Moorman* doctrine applied. *Id.* at 924–26. Next, the court addressed the negligence claim, and found that the real estate appraiser defendant had an extracontractual duty of care. *Id.* at 926–28. *Masarsky* does not establish that a duty of ordinary care *never* includes the duty to communicate accurate information.

This court agrees. The duty of ordinary care does not impose a universal set of requirements, but instead takes the shape of the particular context. An insurance producer's placing or procuring coverage necessarily involves trading in information: the insurance producer must obtain and evaluate information from the insured or proposed insured, use its independent expertise, and provide information to the insured or proposed insured and any other parties necessary to procure the coverage. Taking ordinary care in this process inevitably requires reasonable effort to ensure this information is accurate. In short, an insurance producer which is cavalier about the accuracy of the information it provides to a party seeking coverage can hardly be said to have exercised ordinary care.

This conclusion is reinforced by *Congregation of the Passion*, 159 Ill. 2d 137, 149, 636 N.E.2d 503, 508, a case concerning professional negligence, though not negligent misrepresentation. While examining the duty of care with respect to the negligence claim, the court determined that misreporting the value of investments and misstating the cost of those investments was "a breach of the extracontractual duty of reasonable professional competence[.]" *Id.* at 157, 164, 636 N.E.2d at 512, 515; see also *M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman–Spencer Agency, Inc.*, 845 F.3d 313, 318 (7th Cir. 2017) ("[T]he duty [of ordinary care] can be breached if a broker fails to disclose information about the insurer that would be material to the insured's decision to place the insurance with that insurer."). This conclusion appears to assume that, at least in the context of professional services, the duty of care can include responsibility for accurately communicating information. The court concludes that Vertex's allegations support an inference that Assurance had an extracontractual duty to communicate accurate information to Vertex.

### 2. No General Rule for Insurance Agents

National Union nevertheless insists that the *Moorman* doctrine *always* bars a negligent misrepresentation claim against an insurance agent. (Reply at 9.) In support of this position, National Union cites a district court opinion evaluating the business information exception to the

*Moorman* doctrine, and explained that even if that exception is available for claims against insurance brokers, the *Moorman* doctrine bars claims against agents. *LeDonne v. AXA Equitable Life Insurance Co.*, 411 F. Supp. 2d 957 (N.D. Ill. 2006). Specifically, the court observed that

> an insurance agent is considered to be in the business of providing noninformational products, while an insurance broker is in the business of supplying information to clients. Therefore, the *Moorman* doctrine bars a negligent misrepresentation claim against an insurance agent, but may allow such a claim against a broker.

*Id.* at 963 (internal citation omitted). As this court understands *LeDonne,* the court concluded that an "insurance agent" is so labelled because the agent does not supply business information for its clients' transactions with third parties. In other words, determining whether the *Moorman* doctrine applied followed the ordinary course: the question turns on whether the defendant regularly provided business information, not whether the defendant is labelled as an "insurance agent." Furthermore, the court reached that conclusion while evaluating the business information exception, not the duty of ordinary care recognized in section 2-2201(a).[5] Since the adoption of that statute, Illinois courts that have addressed "insurance producers" in the context of section 2-2201 have found "no distinction" between insurance agents and insurance brokers. *Carr*, 366 Ill. App. 3d at 764, 852 N.E.2d at 912. National Union thus reads too much into *LeDonne.* The court instead finds it more helpful to examine the duties owed by defendants on an individual basis, rather than whether they are characterized as "insurance agents" or not. Here, as explained above, section 2-2201 provides that Assurance, and National Union as its principal, had a duty toward Vertex.

---

[5] As Vertex points out, the facts at issue in *LeDonne* took place before section 2-2201(a) became effective. (Resp. 13); see *LeDonne*, 411 F. Supp. 2d at 959. For the same reason, National Union's citation to *Nielsen v. United Services Automobile Association*, 244 Ill. App. 3d 658, 668, 612 N.E.2d 526, 533 (2d Dist. 1993), decided several years before 2-2201(a) became effective, is also unhelpful. There, the court simply reiterated that a claim "rooted in disappointed contractual expectations" is generally prohibited by the economic loss rule. *Id.*

Because the court concludes that Assurance had this extracontractual duty, the court need not address the commercial information provider exception to the *Moorman* doctrine. The court denies National Union's motion to dismiss Count IV under Rule 12(b)(6).

## II. Rule 10(b)

National Union also argues that Count IV should be dismissed for violating Federal Rule of Civil Procedure 10(b). Rule 10(b) provides: "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." FED. R. CIV. P. 10(b). National Union argues (1) that the negligence and negligent misrepresentation claims in Count IV are founded on separate transactions or occurrences, and (2) that separating them would promote clarity. The court disagrees.

The negligence and negligent misrepresentation claims against National Union are premised on a single transaction or occurrence: Assurance's compliance, or lack of compliance, with Omega's request that Vertex be added to its insurance policy as a Lender's Loss Payee. National Union characterizes Assurance's issuance of the insurance certificate as an act distinct from adding (or not adding) Vertex to the policy, but these are two aspects of the same transaction; that is, issuing the certificate was intended to memorialize the underlying transaction. As an analogy, parties entering into a contract negotiate the terms and then sign a written agreement, but both acts are part of making a contract.

National Union cites *Tompkins v. Central Laborers' Pension Fund*, No. 09-CV-4004, 2009 WL 3836893, at *7 (C.D. Ill. Nov. 16, 2009), where the court characterized a "June 2007 suspension of payments and assessment of an overpayment" and an "August 1999 failure to provide notice of the suspension rules" as separate occurrences. In this case, in contrast, Assurance's action with respect to the policy and the corresponding certificate took place in the same month.

Nor does the court agree that separating the theories pleaded in Count IV is necessary for clarity. There is no reason that any party would confuse these theories or believe that they

were conflated. The factual underpinnings of each theory are indeed explained in separate counts with respect to Assurance (negligence in Count II and negligent misrepresentation in Count III), but Count IV simply incorporates those allegations and seeks to hold National Union liable for those acts under a vicarious liability theory.

Finally, National Union cites to two cases where district courts dismissed complaints under Rule 10(b), but neither is similar to this one. In *Three D Departments, Inc. v. K Mart Corp.*, 670 F. Supp. 1404, 1409 (N.D. Ill. 1987), the plaintiff alleged different theories in different counts, but all of the counts concerned the same contract breach. The result, the court observed, was "unclear allegations and imprecise memoranda." *Id.* In *Trustees of Chicago Regional, Council of Carpenters Pension Fund v. Central Rug & Carpet Co.*, No. 10-CV-1493, 2012 WL 426887, at *3 (N.D. Ill. Feb. 10, 2012), the plaintiff asserted, in a single count, claims for recovery under five theories against several defendants. Neither of those situations is present here. Count IV is pleaded only against National Union, and provides clear notice of Vertex's theories of recovery against National Union. The court does not share National Union's concern that it would be "laborious and confusing" for National Union to respond, or the court to manage, these claims. To require Vertex to re-plead its complaint on this basis alone (for in both *Central Rug* and *Three D*, the plaintiffs were given an opportunity to re-plead) would elevate form over substance.

## CONCLUSION

For the reasons stated above, Defendant National Union's motion to dismiss [25] is denied.

ENTER:

[signature: Rebecca R. Pallmeyer]

Dated: March 14, 2017

_____
REBECCA R. PALLMEYER
United States District Judge

13