UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VERTEX REFINING, NV, LLC, ) | |
| ) | |
| Plaintiff ) | |
| v. ) | No. 16 CV 3498 |
| ) | |
| NATIONAL UNION FIRE INSURANCE, ) | |
| COMPANY OF PITTSBURGH, PA, and ) | Judge Rebecca R. Pallmeyer |
| ASSURANCE AGENCY, LTD., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Omega Holdings Company, LLC ("OHC"), Omega Refining, LLC, and Bango Refining, LLC (collectively, "Omega") purchased an insurance policy from Defendant National Union Fire Insurance Company of Pittsburgh, PA ("National Union") through Defendant Assurance Agency, Ltd. ("Assurance"). Omega later assigned the proceeds from a loss claim to Plaintiff Vertex Refining, NV, LLC ("Vertex") as security for a loan. But National Union paid the claim amount to Omega, not to Vertex. This lawsuit followed. Vertex alleges that Assurance and National Union are liable for distributing insurance proceeds to Omega rather than Vertex. Evidently of the view that the best defense is offense, Defendant Assurance alleges that Vertex made false statements to Assurance and is therefore liable to Assurance on counterclaims of fraud, negligent misrepresentation, and promissory estoppel. Vertex has moved to dismiss the counterclaims for failure to state a claim. For the reasons stated below, the motion is granted.

## BACKGROUND

The facts underlying Vertex's claims are laid out in the court's earlier opinion, *Vertex Ref., NV, LLC v. Nat'l Union Fire Ins., Co. of Pittsburgh, PA*, No. 16 CV 3498, 2017 WL 977000 (N.D. Ill. Mar. 14, 2017). In brief, Vertex alleges that Omega purchased an insurance policy from National Union through Assurance, but later assigned policy proceeds to Vertex as security on a note. *Id.* at *1–2. Assurance issued an insurance certificate confirming that Vertex was

1

entitled to the proceeds, but National Union nevertheless paid the proceeds to Omega, not Vertex. *Id.* Vertex has alleged claims of breach of contract, negligence, and negligent misrepresentation.

Assurance has answered the complaint but also alleges counterclaims and affirmative defenses. (Assurance Answer [23] at 17–19.) For purposes of the motion to dismiss the counterclaims, the facts alleged there are presumed true. *See N. Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir. 1995). Assurance, allegedly "an Illinois insurance producer," asserts that Omega purchased the National Union policy through Assurance, and then made a claim under the policy for an explosion and fire at one of its refineries. (Countercl. [65] ¶¶ 7–10.) Omega "and/or" Vertex hired an insurance adjuster, Carter J. Auslander & Associates ("Auslander"). (*Id.* at ¶ 11.) At some point, an adjuster from Auslander e-mailed blank Proof of Loss forms to directors and employees of both Omega and Vertex. (*Id.*)

Assurance's allegations suggest that if the insurance proceeds were misdirected, it was Omega's and Vertex's own agents who are responsible. From January through October 2014, "the team" (apparently consisting of employees of Omega and Vertex)[1] sent completed Proofs of Loss to Auslander claiming various amounts of losses.[2] (*Id.* at ¶¶ 15–16.) Rick Silverberg, the managing partner of OHC, signed the Proof of Loss forms, which directed that the proceeds were to be paid to Omega. (*Id.* at ¶¶ 12–13.) The forms requested that Omega identify other entities with interests in the proceeds; Omega identified Wells Fargo Bank and BBC Funding, LLC, but not Vertex. (*Id.* at ¶ 14.) Auslander forwarded the Proofs of Loss to AIG—the complaint does not explain the relationship between AIG and National Union, but AIG's adjuster

---

[1] This allegation does not specify who was on this "team," but other allegations state that a "management team comprised of employees, officers, and directors of Omega, Plaintiff, and [Vertex's parent]" "directed" the payments through the Proofs of Loss. (Countercl. ¶ 19.)

[2] Assurance characterizes Vertex's complaint as identifying two Proofs of Loss, submitted on July 31 and October 6, 2014 and claiming a total of $4,892,137.00. (Countercl. ¶¶ 15, 20.)

processed the claim "with National Union's senior management." (*Id.* at ¶¶ 17–18.) National Union paid the requested proceeds to Omega. (*Id.* at ¶ 19; *see also id.* at ¶ 60.) Assurance alleges that these proceeds were deposited—it is not clear by whom—into a bank account that Vertex controlled. (*Id.* at ¶¶ 29–33.)

Assurance identifies three individuals who were "members of the team that prepared the Proofs of Loss[.]" (*Id.* at ¶ 22.) These individuals—Rick Silverberg, James Gregory, and Dave Peel—allegedly worked for both Omega and Vertex (or its parent, Vertex Energy). (*Id.* at ¶ 23.) Gregory e-mailed two of the Proofs of Loss to Auslander, while Silverberg e-mailed one; each copied the others on the e-mails. (*Id.* at ¶¶ 25–27.) Other unnamed employees of Vertex and its parent also "participated in the preparation and submission" of the Proofs of Loss. (*Id.* at ¶ 24.)

Meanwhile, Vertex acquired Omega's assets on May 2, 2014, after "extensive" and "lengthy" negotiations over six to nine months. (*Id.* at ¶ 34.) During these negotiations, Assurance alleges, Vertex and Omega discussed the claim payments, which Omega was using to repair assets that Vertex acquired as part of the asset purchase. (*Id.* at ¶¶ 35–36.) As part of the transaction, a company called CDG Group, LLC "monitored the finances of OHC" and sent to Vertex and Omega reports that confirmed that Omega was receiving the claim proceeds.[3] (*Id.* at ¶¶ 37, 38.) Assurance acknowledges that some reports stated that "other entities, including BBB Funding"[4] should have received the claim payments, but alleges that none of the reports called for Vertex to receive them; and, though Vertex received the reports, Vertex did not contact National Union to direct that Vertex receive the insurance proceeds. (*Id.* at ¶¶ 37–39.)

---

[3] The court has no information about CDG Group, the individuals who prepared these reports, how they did so, or how CDG Group factored into the asset purchase agreement.

[4] It is unclear if this is the same "BBC Funding" listed on the Proofs of Loss.

Eventually, however, after the claim was paid to Omega, Vertex "demanded payment of $4,980,000 of the claim proceeds related to the Loss by National Union and/or Assurance."[5] (*Id.* at ¶ 41.) Assurance does not say to whom this demand was made, but refers generally to "false" demand letters sent to "National Union and/or Assurance[.]" (*Id.* at ¶ 51.) These letters "falsely stated that [Vertex] should have received payment totaling $4,980,000 but did not because Assurance Agency should have somehow directed National Union to pay Plaintiff instead of Omega." (*Id.* at ¶ 42.) Assurance also alleges that Vertex made "numerous false claims to Assurance Agency and/or National Union," including the Proofs of Loss, demands for payment (again, Assurance does not say to whom the demands were made or their exact contents), "and/or additional correspondences" (of which Assurance provides no detail). (*Id.* at ¶ 43.)

Assurance contends these allegations support a number of counterclaims. In Count I, Assurance alleges insurance fraud in violation of 720 ILCS 5/17-10.5, and seeks statutory damages of at least $9,960,000. Counts II through IV allege fraud, as well: common law fraud (Count II), fraudulent concealment (Count III), and fraud in the inducement (Count IV); Assurance also alleges negligent misrepresentation (Count V) and promissory estoppel (Count VI). In Counts II through VI, Assurance alleges three kinds of damages: (1) its costs of defending itself in this lawsuit, (2) "additional damages" that Assurance "has incurred and in the future will continue to incur," and (3) any damages that Vertex might be awarded by virtue of its own claims (which Assurance says would entitle it to a set-off). (Countercl. ¶¶ 61–62, 69–70, 76–77, 84–85, 91–92.) Vertex has moved to dismiss Assurance's counterclaims.

---

[5] This appears inconsistent with the allegation that Vertex did *not* direct National Union to pay it instead of Omega after seeing the CDG Group reports. (Countercl. ¶ 39.) The court does not know when Vertex "demanded payment," or when it received the reports.

**DISCUSSION**

A pleading, including a counterclaim, must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). To state a claim, the pleading must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *Roake v. Forest Pres. Dist. of Cook Cty.*, 849 F.3d 342, 345–46 (7th Cir. 2017).

Allegations of fraud are subject to a heightened pleading standard: a fraud claim requires the pleader to "state with particularity the circumstances constituting fraud," though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). A pleading alleges fraud with particularity when it includes "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (internal citation and quotation marks omitted). Fraud claims based in state law, including state statutes, are subject to this same heightened pleading standard when they are brought in federal court. *See Putzier v. Ace Hardware Corp.*, 50 F. Supp. 3d 964, 972 (N.D. Ill. 2014) (citing *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 470 (7th Cir. 1999)). Under both the 8(a) and 9(b) standards, the court accepts the well-pleaded facts in the complaint as true and draws all reasonable inferences in favor of the nonmovant. *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016); *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 705 (7th Cir. 2008).

**I.    Count I**

In Count I, Assurance alleges that Vertex has violated 720 ILCS 5/17-10.5. This statute provides for civil liability for those who commit insurance fraud:

> A person who knowingly obtains, attempts to obtain, or causes to be obtained, by deception, control over the property of any insurance company by the making of a false claim or by causing a false claim to be made on a policy of insurance

5

issued by an insurance company, or by the making of a false claim or by causing a false claim to be made to a self-insured entity, intending to deprive an insurance company or self-insured entity permanently of the use and benefit of that property, *shall be civilly liable to* the insurance company or self-insured entity that paid the claim or against whom the claim was made or to the subrogee of that insurance company or self- insured entity . . . .

720 ILCS 5/17-10.5(e)(1) (emphasis added). The definition of "false claim" is broad; it encompasses "any statement made to any insurer, purported insurer, servicing corporation, insurance broker, or insurance agent, or any agent or employee of one of those entities, and made as part of, or in support of, a claim for payment or other benefit under a policy of insurance[.]" 720 ILCS 5/17-0.5. "Statement," in turn, means "any assertion, oral, written, or otherwise, and includes, but is not limited to: any notice, letter, or memorandum; proof of loss; . . . ." 720 ILCS 5/17-0.5. Assurance argues at length that it is an "insurance company" or "self-insured entity" under the statute; the issue of what type of company qualifies as an "insurance company" for purposes of this insurance fraud statute has apparently not been addressed by Illinois courts. Yet the court need not reach this issue, because (1) Assurance has not alleged the false statements that Vertex made to it in sufficient detail, and (2) Assurance is not an entity that paid a claim or against whom an insurance claim was made.

First, Assurance identifies three types of false claims that Vertex made to Assurance "and/or" National Union: Proofs of Loss, demands for payment, "and/or additional correspondences."[6] (Countercl. ¶¶ 43, 49.) First, Assurance describes in detail the Proofs of

---

[6] Assurance also urges that because Vertex's complaint states that it seeks damages because it was not paid proceeds as required under the policy, Vertex's complaint itself is a "false claim." (Assurance's Resp. to Pl.'s Mot. to Dismiss Countercl. [75] at 10.) The court cannot agree. First, assuming that Vertex's lawsuit can be construed as an insurance claim, it is not an insurance claim against Assurance: Vertex's complaint alleges that National Union, not Assurance, failed to pay the insurance proceeds. Second, the complaint seeks damages in tort and contract, but does not purport to be a claim under the policy itself. If Vertex wanted either Defendant to perform under the policy, it would seek specific performance, not damages. Third, the court expects that Vertex's complaint would be entitled to litigation privilege under Illinois law. *Cf. Scheib v. Grant*, 22 F.3d 149, 156 (7th Cir. 1994) (applying the Illinois litigation privilege to a state law claim other than defamation); *Squires-Cannon v. Forest Pres. Dist. of Cook Cty.*, No. 15 C 6876, 2016 WL 561917, at *8 (N.D. Ill. Feb. 12, 2016),

6

Loss, but alleges that they were submitted to Auslander and ultimately National Union, who paid the claim. (*See id.* at ¶¶ 16–19, 21–22.) Assurance itself seems uncertain whether it ever received the Proofs of Loss—it simultaneous alleges that Vertex submitted the Proofs of Loss to "National Union, *and* Assurance Agency[,]" and to "Assurance Agency *and/or* National Union[.]" (*Id.* at ¶¶ 43, 53 (emphasis added).) Assurance has provided some detail about the Proofs of Loss themselves, and their submission to National Union and Auslander, but Assurance offers no detail about Assurance's own receipt of them. For example, the counterclaim says nothing about who sent or received the Proofs of Loss, when Assurance received them, or whether Assurance was involved in paying the proceeds requested. Without these details, the allegation that Vertex submitted this "false claim" to Assurance is insufficient.

Assurance also alleges that Vertex demanded payment and sent "additional correspondences."[7] (Countercl. ¶¶ 41, 43.) Again, the counterclaim offers no details about this demand for payment, other than the amount that Vertex sought, nor about these additional communications. Moreover, Assurance again alleges that these "false claims" were sent to National Union "and/or" Assurance. Assurance ought to be able to say, without ambiguity, whether and when it received Proofs of Loss, a demand letter, or "other correspondences." Without additional details, the court doubts that Assurance's allegations on this issue would even satisfy Rule 8(a).

But second, even if Assurance had adequately alleged the details of these false statements, and adequately alleged that the false statements were made to Assurance, Assurance has not adequately alleged that the circumstances of those false statements would

---

*reconsideration denied*, No. 15 C 6876, 2016 WL 3653578 (N.D. Ill. July 8, 2016) (citing Illinois cases). A complaint seeking recovery through the legal system cannot be the basis for a fraud claim.

[7] Assurance also alleges that "Plaintiff falsely stated that it should have received payment totaling $4,980,000 but did not because Assurance Agency should have somehow directed National Union to pay Plaintiff instead of Omega." (Countercl. ¶ 42.) The lack of detail about this "false statement" would likely not even pass Rule 8(a), much less Rule 9(b).

support a cause of action under this statute. The language of the statute authorizes a suit only by an entity "that paid the [false] claim or against whom the claim was made."[8] 720 ILCS 5/17-10.5(e)(1); cf. *Ultsch v. Illinois Mun. Ret. Fund*, 226 Ill. 2d 169, 184, 874 N.E.2d 1, 10 (2007) ("Where the language of a statute is plain and unambiguous, a court need not consider other interpretive aids."). Even if a false statement was made to Assurance, that statement would have been made in support of an insurance claim against *National Union*, the issuer of the insurance policy; it would not be a false claim against Assurance.[9] A false statement to Assurance is not the same as a false claim *against* Assurance. In fact, it is unclear whether the demand letter or "additional correspondences" were demands "under a policy of insurance," or, like the demands in this lawsuit, demands to be made whole as a result of Assurance's alleged wrongdoing. Count I of the counterclaim is dismissed.

## II. Counts II through V

Vertex has made several arguments for dismissal of Count II (fraud), Count III (fraudulent concealment), Count IV (fraud in the inducement) and Count V (negligent misrepresentation). The court need address just two of those arguments: that Assurance does has not sufficiently pleaded damages or reliance on Vertex's purported misrepresentations or omissions.

---

[8] Assurance does not allege that it is a subrogee, who can also bring a suit.

[9] The parties extensively discuss *Nomat v. Mota*, 2016 IL App (1st) 140102-U, ¶¶ 3, 28 *appeal denied*, 50 N.E.3d 1140 (Ill. 2016), where the plaintiff filed suit seeking damages from a vehicle accident. During discovery, the plaintiff initially stated that he was unemployed,, but later claimed he had incurred significant lost wages and had been employed since before the accident, and the defendants' insurer brought an insurance fraud action against the plaintiff. *Id.* at ¶ 29. But "plaintiff's allegation of damages for lost earnings was not a statement to [the insurer] but, rather, to defendants[.]" *Id.* at ¶ 77. Accordingly, the court found that the insurer did not have standing under the insurance fraud statute, because the "plaintiff did not make any false claims on a policy of insurance." *Id.* at ¶ 75. In *Nomat*, the entity to whom the false statement was made (the defendants) was not the same entity who sought to hold the plaintiff liable (the insurer). In this case, if Vertex did make a false statement to Assurance, then Assurance is both the entity to whom the false statement was made and who seeks to bring suit. *Nomat* therefore does not address the relevant issue here.

### A. Failure to Adequately Plead Damages

Assurance alleges that it was damaged in three ways: (1) the cost of defending itself against Vertex's complaint, (2) unspecified "additional damages" that Assurance "has incurred and in the future will continue to incur," and (3) the cost of paying Vertex's award if Vertex wins its suit (specifically, Assurance asks for a set-off for any award Vertex wins). (Countercl. ¶¶ 61–62, 69–70, 76–77, 84–85.) None of these are adequate to state a claim.

First, although a party can recover legal fees incurred when a wrongdoer causes it to litigate against a third party, fees incurred in litigation against the alleged wrongdoer itself are not recoverable as damages. *Ritter v. Ritter*, 381 Ill. 549, 553–55, 46 N.E.2d 41, 43–44 (1943) ("[A]ttorney fees and the ordinary expenses and burdens of litigation are not allowable to the successful party in the absence of a statute [or agreement.]"); *see Tolve v. Ogden Chrysler Plymouth, Inc.*, 324 Ill. App. 3d 485, 491, 755 N.E.2d 536, 541 (2d Dist. 2001); *Bussman v. Krizoe*, 166 Ill. App. 3d 770, 772–73, 520 N.E.2d 971, 973–74 (5th Dist. 1988). Here, where Assurance seeks recovery of its defense costs as damages, the same principle applies. That Vertex may have committed some wrongful act does not provide an exception to the normal rule that litigation costs are not recoverable as damages.

Second, vague allegations of "additional damages" that Assurance has incurred and will incur in the future do not meet the pleading standard. Merely stating that Assurance has suffered or will suffer damages is a legal conclusion that does not entitle Assurance to relief under Rule 8(a) or 9(b). *See Twombly*, 550 U.S. at 555.

Third, any award that Assurance may owe to Vertex does not constitute harm to Assurance that would sustain a counterclaim. Assurance's argument here essentially contends that but for Vertex's own wrongdoing, Assurance would not have to pay damages to Vertex—

but that is a defense to liability, not a claim for independent relief.[10]  *Cf. Tenneco Inc. v. Saxony Bar & Tube, Inc.*, 776 F.2d 1375, 1379 (7th Cir. 1985) ("What is really an answer or defense to a suit does not become an independent piece of litigation because of its label.").  This recasting does not itself require dismissal; under Rule 8(c), where a party "mistakenly designates a defense as a counterclaim . . . the court must, if justice requires, treat the pleading as though it were correctly designated[.]"  FED. R. CIV. P. 8(c)(2).  Even interpreted as affirmative defenses, however, these allegations are no more than a denial of liability and would be stricken on motion.

### B.  Construing Counts II through V as Affirmative Defenses

The Seventh Circuit has not addressed the issue of whether affirmative defenses are subject to the Rule 8(a) pleading standard.  Several district courts have concluded that that they are, and the court believes this is appropriate in circumstances where the defenses suggest fraud.  *See Badshah v. Am. Airlines, Inc.*, No. 17 C 01254, 2017 WL 2021089, at *1 (N.D. Ill. May 12, 2017); *Shield Techs. Corp. v. Paradigm Positioning, LLC*, No. 11 C 6183, 2012 WL 4120440, at *8 (N.D. Ill. Sept. 19, 2012).  Reliance (on a statement or an omission) is an element of each of the four defenses at issue.  *See Doe v. Dilling*, 228 Ill. 2d 324, 342–43, 888 N.E.2d 24, 35–36 (2008) (fraud); *Phillips v. DePaul Univ.*, 2014 IL App (1st) 122817, ¶ 82, 19 N.E.3d 1019, 1037 (fraudulent concealment); *Enter. Recovery Sys., Inc. v. Salmeron*, 401 Ill. App. 3d 65, 72, 927 N.E.2d 852, 858 (1st Dist. 2010) (fraud in the inducement); *Jane Doe-3 v. McLean Cty. Unit Dist. No. 5 Bd. of Directors*, 2012 IL 112479, ¶ 28, 973 N.E.2d 880, 889 (negligent misrepresentation); *see also* FED. R. CIV. P. 8(c)(1) (fraud is an affirmative defense).

The only specific statements described in the pleading, as noted above, are the Proofs of Loss that Vertex allegedly submitted to Auslander and National Union.  Assurance does not

---

[10]  Assurance confirms the court's conclusion on this score by alleging that Vertex concealed material facts "[i]f this Court finds that Plaintiff is entitled to insurance claim proceeds." (Countercl. ¶ 64.)  Assurance's liability is a prerequisite for this claim and it is therefore an affirmative defense.

explain how Assurance itself relied on the Proofs of Loss or what actions it took in reliance on them. Nor has Assurance described how it relied—that is, what actions it took—on any demand for payment or other "additional correspondences." Again, the pleading alleges that *National Union* took action—paying the proceeds to Omega—while relying on the Proofs of Loss, but it does not say what actions Assurance took in reliance on that or any statement or concealment.

Assurance responds that it does allege reliance, citing several allegations. (Def. Assurance's Resp. to Pl.'s Mot. to Dismiss Countercl. ("Assurance Resp.") [75] at 13–14 (citing Countercl. ¶¶ 3, 13, 57–59, 79, 81).) Contrary to Assurance's assertions, several of the allegations it invokes do not mention Assurance at all, and instead refer only to what Vertex intended Assurance to do, not what Assurance actually did. Only one of the cited paragraphs refers to "acts" that Assurance undertook, which are not specified. (Countercl. ¶ 3.) Assurance's references to reliance are no more than vague assertions that Assurance relied on Plaintiff's statements, or "would have acted differently" if it knew the truth (*id.* at ¶¶ 60, 67, 68, 75, 82); Assurance does not describe *how* it relied on Vertex's statements or omissions—what specific actions it took, for example. The only specific action described (payment of the claim proceeds to Omega) is that of National Union, not Assurance. Stating that Assurance "acted in reliance" or "engaged in various acts" merely recites the reliance element. Because these pleadings, construed as affirmative defenses, do not explain how Assurance relied on Vertex's statements or omissions, they must be stricken.

### III. Count VI

To establish a claim for promissory estoppel in Illinois, a plaintiff must prove "that (1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Newton Tractor Sales, Inc. v. Kubota Tractor Corp.*, 233 Ill. 2d 46, 51, 906 N.E.2d 520, 523–24 (2009). Vertex argues that this claim should be dismissed because Assurance has not alleged that Vertex made any promises to Assurance. Assurance responds

by identifying three promises that Vertex purportedly made to Assurance: (1) "through the Proofs of Loss, demand letter, and other correspondences, that [Vertex], and not Omega, was entitled to claim proceeds on National Union's insurance policy;" (2) that "[Vertex] should have been added by Assurance Agency as a Lender's Loss Payee on the insurance policy;" and (3) "that Vertex had 'no additional interests' in the claim proceeds[.]" (Assurance Resp. 15.)

These are not promises. A promise is "a declaration that one will do or refrain from doing something specified"—in other words, they are statements about what one will do in the future. *Promise*, MERRIAM-WEBSTER COLLEGIATE DICTIONARY (11th ed. 2003). These statements, by contrast, concern the past or present. They say nothing about what Vertex will do in the future. These are instead statements of fact that may be untrue, but that does not transform them into promises.

Assurance also claims that Vertex made other, unspecified promises, but the counterclaim refers only to unnamed "various promises[.]" (Countercl. ¶ 87; *see also* Assurance Resp. 15.) The court can find no specific promises—statements about what Vertex would or would not do in the future—described in the counterclaim. Count VI is dismissed.

## CONCLUSION

For the reasons stated above, Vertex's motion to dismiss Assurance's counterclaims [67] is granted without prejudice. If it chooses, Assurance has leave to amend the counterclaim within 21 days.

ENTER:

Dated: July 11, 2017

_____
REBECCA R. PALLMEYER
United States District Judge